Johnson, J.
delivered the opinion of the Court.
Lord Coke defines a barretor to be, “ a common mover and exciter, or maiutainer, of suits, quarrels, or parts, either in Courts, or elsewhere in the country. In Courts, as in Courts of record, or not of record, as in the county, hundred, or other inferior Courts. In the country, in three manners : first, in the disturbance of the peace : second, in taking and keeping possession of lands in controversy, not only by force, but also by subtilty and deceit, and most commonly by suppression of truth and right: thirdly, by false inventions, and sowing of ca-lumniations, rumors, and reports, whereby discord and disquiet may grow between neighbours.” Co. Lit. 368 a. b. And this definition is followed by all other elementary writers. Rolle’s Abr. 353, Barretors. 1 D’Auver’s Abr. 725, Barretors. 4 Vincr’s Abr. 208,-9, Barretors. A. Bac. Abr. Barratry. (A.)
The notice to the defendant, containing a specification of the matters intended to be given in evidence on the trial, was confined to acts of the defendant, tending to promote, and excite the commencement of divers prosecutions, in the Court of Sessions, for assaults and batteries, arid other petty offences: and I shall ^therefore, confine my remarks to that part of the general definition, which describes a barretor as a common mover and exciter of suits in Courts. And I shall consider: 1st. Whether moving and exciting criminal proeeutions constitutes barratry. 2d. Whether barratry can be committed by moving and exciting the commencement of a just suit, supposing the motive to be selfish, or oppressive.
The argument in support of the negative of the first proposition, is, that the affirmative would facilitate the escape of offenders, by deterring persons from taking that interest in public prosecutions, which is indispensably necessary for bringing the violators of the law to justice ; and which is not onlv the privilege, but the bounden duty of every good citizen, and more especially of public magistrates. The genera! definition is sufficiently broad to cover every description of legal proceedings. *398 It is certain, that criminal prosecutions are not expressly excluí!» ej . al)(j ¡p we examjue the policy, which punishes the offence, ^ be found, that there is no reason, why they should be excluded. 1 he offence, as I understand it, does not consist, as I shall hereafter have occasion more particularly to notice, in promoting either private suits or public prosecutions, when the sole object is the attainment of public justice, or private right; but on the prostitution of these remedies to mean, and selfish purposes. He who brings a public offender to justice, does well; but lie who uses a public prosecution as a means of gratifying a passion for mischief, or for the sake of filthy lucre, or oppression, is an offender of no ordinary .magnitude. A protection is, therefore, found against the evil which the argument supposes, in the motive which prompted an interference in the prosecution, and in the further circumstance, that it does not consist of one, but of many independent acts. If it be insisted, that this would expose a party to the caprice of a jury, it is answered, that the intention enters into, and is of the very essence of all criminal offences; and when the other acts are ascertained, it is of that alone the jury are to judge : and one charged with barretry can not be more favoured.
The promotion and excitement of civil suits for bad motives is, confessedly, within the scope of the definition. Is a public prosecution less liable to be abused, or less oppressive in its effects, than a civil suit? If the design be to sow.the most incurable and implacable dissentions; to inflict ruin on an individual ; to extort money; or gratify a restless, mischievous inclination, and triumph in the tortures which are inflicted on others, villainy itself could not have forged an engine more, accessible, or more destructive in its effects. A civil suit operates ouly on the purse of the victim ; but this is the least evil to be expected from a criminal prosecution. Lord Coke lakes the same view of the subject, in his report of “ The Case of Barretry,” in which he enumerates among the various modes by which the offence may be committed, the “ malicious bringing of a special suppKccvit, or latitat of the peace, all by fraud and malice, to enforce the poor party ad redimendam vexationem, to give him money or make other composition. And this,” he adds, “ is the most dangerous oppressor, for he oppresses the innocent by colour and countenance of the law, which was institut *399 ed to protect the innocent from all oppression and wrong.” 8 Rep. 74.
The second proposition, although not perhaps indispensably necessary to the case, made by the facts, becomes important on account of the instruction of the presiding Judge to the jury, that the stirring up of suits against the wishes of the party injured, or interested, for the sake of lucre, would constitute bar-retry, even in cases which were not otherwise illegal. The books all agree in the definition before given. A common mover and exciter of suits, &c. is a bárretor, without distinguishing between such suits as are just, and such as are unjust, and whether well, or ill-founded. The indictment itself contains the same generality of expression. It charges that the accused “ divers quarrels, strifes, suits, and controversies, among the honest and liege subjects of our Lord the King, did then, and there, move, procure, stir up, and excite, to the evil example of all others in like .cases offending,” &c. Cr. Cir. Comp. 206. From all which1, I think it clearly deducible, that the offence may be committed, by promoting or exciting suits, or prosecutions, although a wrong may have been done, or a petty offence committed. Independently of the generality of the definition, it is a standing rule, that the indictment must so state the facts, that the Court may see that an offence has been committed, without any reasonable intendment to the contrary. No words or periphrasis will supply the terms of art, used in the definition of an offence, as that of felónica in felony ; and if barretry were confined to the promoting and exciting of unjust suits, the indictment must so have stated it, for otherwise it would not appear that the suits excited, or moved, were not just.
The propriety and morality of promoting just suits to recover a private right, and the necessity of encouraging prosecutions for public offences of evil example, have been urged in support of the negative of this proposition. The case of the King v. -, 3 Mod. 97, has been relied on, it being there said, that if a man lay out money, in behalf of another in suits at law to recover a just right, he is not a barretor, and that he may do this in respect of the poverty of the party. Some subsequent writers also, losing sight of the reason of the rule, have laid it down, generally, that it was not barretry to spend money in pro *400 moting the suit of another to recover a just right. Com. Dig. Barretry (B) But it will be remarked, that in the very same sentence, in the case referred to, it is expressly laid down, that if one lend money to promote and stir up suits, he is a barretor; distinguishing, I think, very clearly between the meritorious act of aiding the poor in the prosecution of a right, and an officious and improper intermedling for the sake of mischief, and the injury it may work, or other bad motives.
This distinction, Í think, is clearly taken by Viner. He is not a barretor, it is said, who prosecutes an infinite number of his own suits, although they are unjust; for if such person shall be a barretor, then he that sues for cause may be comprehend- , ed. 4 Vin. Abr. 208. Barretors. A. Clearly indicating that he who prosecutes a number of suits, not his own, is a barretor, although they are just; and I incline myself to think with Ser-jeant Hawkins, that there is no well founded reason, why he who prosecutes an infinite number of unjust suits of his own, should not incur the penalties of barretry, where the object is vexation and oppression. 1 Hawk. P. C. ch. 81, sec. 3. Lord Coke has applied to a barretor the cognomen of busy-body. 8 Rep. 72. According to others, he is a deceiver, a vile knave, an unthrift, a maintain er of quarrels, &c. ; and the vilest of all is he, who deals in criminal process, “ to enforce the poor pany ad redimendam vexationem, to give him money, or to make other composition.” 8o that he who promotes or excites unjusts • suits, although an offender of high rank, is not. exclusively so. The busy-body, the deceiver, the vile knave, or un-thrift, who excites others to litigation, with an intention to vox, and oppress, and by this means to extort money, is no less an offender against public justice.
Maintenance, it seems, is a species of barretry ; and cham-perty, and conspiracy belong to the same class of offences, and yet it never entered into the mind of any man, that he who uu-lawfully maintained a suit, bargained to divide the field,* or conspired with others, was less a maintainer, ehamperior, or conspirator, because the cause was just, if the motive were selfish, *401 or oppressive. Is the Judge, juror, or witness, who receives a bribe, or the seducer who tempted them, the less criminal, because, in the end, a private wrong may have been redressed, or a public offence punished 1 And yet, all the reasons, which tend to excuse an act of barretry, apply equally- to all these cases. The temple erected and consecrated to Justice, is not, however, to be polluted with impunity, by those who would prostitute the rules regulating its police to base and unworthy purposes; although they may be associated with, arid approach under the colour of right, as in the cases before alluded to. The monster compounded of fraud, and deceit, and knavery, is forbidden the sanctuary, in whatever guise he may present himself.
The redress of private wrongs, and the suppression and punishment of crimes, and'misdemeanors, as the means of promoting the happiness of mankind, are the leading objects of the government and laws of every well regulated society. The pursuit of right, whether public or private, can never be an offence, where justice alone is the end in view ; but every perversion of the machinery of the law to other purposes, by coupling it with improper objects, is reprehensible. Hence if one lay out money in theprosecution of a suit to recover a close, of which his poor neighbor has been deprived, and without which he must lose it, he is no champertor, because right, humanity and justice, would approve it: but if he do it upon a stipulation, that he shall receive one half of the field, if it be recovered, he is, according to the legal definition of this offence, a cham-pertor. So if one move, or excite others to bring divers civil suits, or criminal prosecutions, in the belief that the ends of justice will be promoted by it, he is not, according to my view of the subject, a barretor ; but if he superadd base and unworthy motives, as when he himself is in a situation to use them as the means of gratifying his resentment, or extorting money from the parties, he is a barretor.
The facts reported in this case speak for themselves, and shew their own application to the rules before laid down. In point of number, the acts of barretry leave no doubt, that it was "the trade of the office, which the defendant kept as a magistrate and that it was of every day’s occurrence, to excite and promote prosecutions for petty offences, as the means of extort *402 ing money from the ignorant: and the mind turns with disgust from the depravity which suggested it.
It has been urged as a ground in support of this motion, that as the defendant used the office of magistrate to effectuate this offence, he could only be indicted as for a misdemeanor in office; and that, however, the rule might be in respect to others, exciting a limited number of prosecutions, would not be barretry in him. Our laws recognize no distinction between citizens of the State. The same number of barretrous acts, and the same circumstances, which, united, constitute barretry in a private person, will make a magistrate a barretor, with this aggravation, that he will be presumed better to have known his master’s will, and ought, therefore, “ to be beaten with many stripes.”
It is further objected, that the receiving of illegal fees was punishable in a prosecution for mal-practice in office as a magistrate, and was not, therefore, admissible on the trial of this case. The general rule very clearly is, that proof of one distinct offence, cannot bo given in evidence on a prosecution for another ; but that rule does not obtain, when it enters info the substance of the offence charged, or constitutes a part of the res gestee. In the present case, the exacting of more than legal fees, as the condition of the parties compounding the prosecutions, was calculated to develope the motives which prompted the defendant to move and excite them ; and nil bis acts connected with them were admissible as a part of the res gestes. The motion for a new trial must, therefore, be refused.
Colcock, J. concurred.

 Campwm, partiré,; unde champerty, i. e. bargaining to carry on the suit of another at the ehampertor’s expense, on the condition of dividing the land or other matter sued for, between them. 1 Russell, 371.